UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WISCONSIN

---

In re:  Case Number: 14-13435-7

GERALD W. BERG and
PEGGY A. BERG,

           Debtors.

---

PEGGY A. BERG,

           Plaintiff,

    v.  Adversary Number: 16-89

SOCIAL SECURITY ADMINISTRATION,

           Defendant.

---

## MEMORANDUM DECISION

This matter is before the Court on the motion of Plaintiff Peggy A. Berg ("Berg") for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), made applicable to bankruptcy proceedings through Fed. R. Bankr. P. 7012(b). To decide this motion, the following facts alleged or presented by agreement of the parties are recited. For the reasons set forth below, the Court concludes the Social Security Administration's insufficiency position decreased during the 90 days prior to Berg's bankruptcy filing in the amount of $2,015.00. Accordingly, Berg is entitled to that amount.

### FACTS

Peggy A. Berg filed a voluntary Chapter 13 petition under title 11 of the Bankruptcy Code on August 7, 2014. She moved to convert her case to a

Chapter 7 on September 8, 2014. The Court entered a final decree on January 21, 2015. On August 4, 2016, Berg filed a motion to reopen her bankruptcy case. On November 15, 2016, she filed the present adversary complaint seeking to unwind the Social Security Administration's prepetition setoff of her social security disability benefits.

Berg received disability insurance benefits from the Social Security Administration (the "SSA") from June 1994 through December 2003. She became re-employed in 2002. Despite having notified the SSA of her return to employment, it continued to pay and Berg retained benefits until the benefits were terminated in December 2003. This resulted in an overpayment of $25,690.00.

The SSA determined Berg was without fault in causing or accepting the overpayment (20 C.F.R. 404.507(c)). Nonetheless, it also determined that recovery of the overpayment would not be inequitable. She did not appeal the determination. A payment plan was established for payment at the rate of $300.00 per month. Berg made payments for a period and reduced the overpayment to $19,400.00 as of July 2014.

Berg stopped working on November 17, 2012. In March 2014, she filed another application for disability benefits with a protective filing date of January 2014. On July 15, 2014, the SSA granted the application. It determined that she met the criteria for disability as of November 17, 2012. Under the regulations, she was entitled to receive benefits beginning in May 2013. The SSA's Notice of Award letter dated July 30, 2014, explained the

benefits, their accrual rate, and adjustments for cost of living. The Award letter also told Berg that the SSA determined it would use $19,400.00 of the accrued benefits to pay off the remaining overpayment. The SSA kept and applied $19,400.00 of back benefits and sent a payment of $907.00 to Berg for July 2014.[1] Full benefit payments commenced in August 2014.

Berg filed bankruptcy on August 7, 2014. She identified the $19,400.00 as a possible asset subject to recovery in her schedules. She also disclosed it as a setoff in her Statement of Financial Affairs. Berg commenced this adversary proceeding seeking recovery of the amount of back benefits set off by the SSA. The basis for her claims are 11 U.S.C. §§ 553(b) and 522(h). The parties have stipulated the relevant facts are undisputed. The Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(a) and 157(a). This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (I), and (O).

## ARGUMENTS

The parties agree the transaction at issue is a setoff governed by 11 U.S.C. § 553(b). They disagree on the extent to which section 553(b) unwinds that transaction.

The SSA argues the offset of benefits was not inequitable. It points out the SSA cannot waive recovery of overpayments except in narrow circumstances that are inapplicable in this case. It argues the statutory preservation of setoff supports the application of accrued benefits against the

---

[1] This amount represented the monthly benefit remaining for July 2014 after deduction of the prior overpayment from the accrued benefits.

3

overpayment. It contends it did not improve its position or, alternatively, the only possible improvement was $1,163.00 representing a change in position between May 9, 2014,[2] and July 30, 2014.

Berg argues the offset of accrued benefits against the overpayment occurred within 90 days of the petition date and would have been recoverable by a trustee under section 553. Further, she asserts there was no "mutual debt" within the 90 days and that the SSA improved its position. In her response, it is clear what Berg does *not* argue:

> (1) the SSA did not overpay her;
>
> (2) the amount of overpayment was incorrectly calculated;
>
> (3) the amount of accrued benefits that were set off were incorrectly calculated;
>
> (4) that, in the absence of a bankruptcy, there would have been a right of setoff.

The parties frame the issues as (1) whether the SSA's actions qualify as a setoff under section 553, and (2) whether, notwithstanding the provisions of section 553, the rights are constrained by section 522 and thus recoverable.

## STANDARD

A motion for judgment on the pleadings is subject to the same standard as a motion to dismiss under Rule 12(b)(6). *Federal Sign v. Fultz (In re Fultz)*, 232 B.R. 709, 716 (Bankr. N.D. Ill. 1999). The Court "may not look beyond the pleadings, and all uncontested allegations to which the parties had an opportunity to respond are taken as true." *Alexander v. City of Chicago*, 994

---

[2] May 9 is the 90th day.

4

F.2d 333, 335 (7th Cir. 1993). Therefore, we must determine whether the complaint states "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009). All well-pleaded factual allegations in Berg's complaint are taken as true, and all reasonable inferences from the facts are drawn in favor of the non-movant. *Chicago Bldg. Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610, 612 (7th Cir. 2014); *see also Golden v. Gibrick*, 561 B.R. 470, 473 (Bankr. N.D. Ill. 2016). There are no contested facts.

## APPLICABLE STATUTES

To resolve this case, the meaning of various statutes must be considered.

Section 553(a) recognizes a creditor's right to offset a mutual debt and provides:

> (a)  Except as otherwise provided . . . title [11] does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case, except to the extent that--
>
>   (1) the claim of such creditor against the debtor is disallowed;
>
>   . . .
>
>   (3) the debt owed to the debtor by such creditor was incurred by such creditor--

5

>>(A) after 90 days before the date of the filing of the petition;
>
>>(B) while the debtor was insolvent; and
>
>>. . . .

Section 553(b) restricts a creditor's right to offset a mutual debt and reads:

> (b)(1) Except with respect to a setoff of a kind described in section 362(b)(6), 362(b)(7), 362(b)(17), 362(b)(27), 555, 556, 559, 560, 561, 365(h), 546(h), or 365(i)(2) of this title, if a creditor offsets a mutual debt owing to the debtor against a claim against the debtor on or within 90 days before the date of the filing of the petition, then the trustee may recover from such creditor the amount so offset to the extent that any insufficiency on the date of such setoff is less than the insufficiency on the later of—
>
>> (A) 90 days before the date of the filing of the petition; and
>
>> (B) the first date during the 90 days immediately preceding the date of the filing of the petition on which there is an insufficiency.
>
> (b)(2) In this subsection, "insufficiency" means amount, if any, by which a claim against the debtor exceeds a mutual debt owing to the debtor by the holder of such claim.

Section 522(h) provides:

> (h) The debtor may avoid a transfer of property of the debtor or recover a setoff to the extent that the debtor could have exempted such property under subsection (g)(1) of this section if the trustee had avoided such transfer, if—
>
>> (1) such transfer is . . . recoverable by the trustee under section 553 of this title; and
>
>> (2) the trustee does not attempt to avoid such transfer.

6

The Court must also consider the statute that requires the SSA to reduce, by offset, an individual's disability benefits when the individual has been overpaid. The authority of the SSA to address overpayments is in 42 U.S.C. §§ 404 and 1383. It permits the SSA to adjust future payments when there has been a past overpayment or underpayment. *See* 42 U.S.C. § 1383(b).

## DISCUSSION

Generally, a creditor has a right to setoff under the Bankruptcy Code where four conditions are present: "'(1) the creditor holds a 'claim' against the debtor that arose before the commencement of the case; (2) the creditor owes a 'debt' to the debtor that also arose before the commencement of the case; (3) the claim and debt are 'mutual'; and (4) the claim and debt are each valid and enforceable.'" *St. Francis Physician Network v. Rush Prudential HMO (In re St. Francis Physician Network)*, 213 B.R. 710, 715 (Bankr. N.D. Ill. 1997) (*quoting* 5 *Collier on Bankruptcy* ¶ 553.01 (15th ed. Revised)). Each element is present in this case.

Turning to the first element, the SSA must hold a prepetition claim against Berg. A claim is a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured. 11 U.S.C. § 101(5). The SSA held a prepetition claim against Berg based on its overpayment of disability benefits. That claim was determined in December 2003. Thus, the SSA held a prepetition claim against Berg.

Next, the SSA must owe a prepetition debt to Berg. A debt is liability on a claim. 11 U.S.C. § 101(12). The SSA owed a prepetition debt to Berg under her 2014 disability application. While the amount of the debt was not liquidated until the determination in July 2014, there was nonetheless a debt because there was a right to payment on an unliquidated, contingent claim when she filed the application in March 2014.

Berg filed her disability application approximately 159 days before the petition date. While the SSA's amount of the debt was determined a mere 23 days before the petition date, the entitlement to payments dated back to November 17, 2012 – 263 days before the petition date. There was, indisputably, a debt owed prepetition by the SSA to Berg.

The Court now turns to whether the obligations owed by the parties are mutual. Mutuality is established "when the offsetting obligations are held by the same parties in the same capacity (that is, as obligor and obligee) and are valid and enforceable . . . ." *Meyer Med. Physicians Grp., Ltd. v. Health Care Serv. Corp.*, 385 F.3d 1039, 1041 (7th Cir. 2004) (citations omitted). These offsetting obligations may arise either prepetition or postpetition and may arise out of separate transactions. *Id.* Simply put, "[m]utuality requires that the debt in question be owed in the same right and between the same parties standing in the same capacity" regardless of the debt's character. *Id.* (citations omitted).

The SSA and Berg held mutual obligations in the same capacity as obligor and obligee. As described, in December 2003, the SSA determined it overpaid Berg disability benefits of $25,690.00, and in 2009 an administrative

8

law judge adjusted that amount to $24,000.00, which Berg reduced to $19,400.00. On July 15, 2014, the SSA granted Berg's application and determined she was disabled as that term is defined under the Social Security Act since November 17, 2012, and entitled to receive $20,307.00 in disability insurance benefits. Thus, the parties and their respective capacities have not changed.

Finally, there is no dispute over whether the claim and debt are each valid and enforceable. Thus, the Court finds the elements for setoff are present. However, that does not end the Court's inquiry.

Section 553(b) of the Bankruptcy Code restricts a creditor's ability to exercise its right of setoff within the 90-day period prior to a debtor's bankruptcy filing. Section 553(b) reads:

> (1) Except with respect to a setoff of a kind described in section 362(b)(6), 362(b)(7), 362(b)(17), 362(b)(27), 555, 556, 559, 560, 561, 365(h), 546(h), or 365(i)(2) of this title, if a creditor offsets a mutual debt owing to the debtor against a claim against the debtor on or within 90 days before the date of the filing of the petition, then the trustee may recover from such creditor the amount so offset to the extent that any insufficiency on the date of such setoff is less than the insufficiency on the later of—
>
>   (A) 90 days before the date of the filing of the petition; and
>
>   (B) the first date during the 90 days immediately preceding the date of the filing of the petition on which there is an insufficiency.
>
> (2) In this subsection, "insufficiency" means amount, if any, by which a claim against the debtor exceeds a mutual debt owing to the debtor by the holder of such claim.

To begin, a trustee, or as is the case here, a debtor acting under 11 U.S.C. § 522(h), may recover a setoff under 11 U.S.C. § 553(b)(1) to the extent

9

the creditor improved its position within the 90-day period preceding the debtor's bankruptcy filing. As provided under section 553(b)(1), a trustee may recover the amount offset to the extent that any insufficiency on the setoff date is less than the insufficiency on the later of (A) 90 days before the petition date, and (B) the first date during the 90 days immediately preceding the petition date on which there is an insufficiency.

Section 553(b)(1) directs the Court to look at two separate dates to determine whether the SSA improved its position relative to other creditors during the 90-day period prior to Berg's bankruptcy. This calculation proceeds in four steps, and is "strictly mathematical." *See 5 Collier on Bankruptcy* ¶ 553.09[2][a] (16th ed.); *Braniff Airways v. Exxon Co.*, 814 F.2d 1030, 1040 (5th Cir. 1987).

First, section 553(b)(1) requires the Court to determine the SSA's setoff position 90 days prior to Berg's filing. To calculate the SSA's position, the Court must compare the SSA's claim with its debt, and calculate the extent to which its claim exceeds the amount of the debt, i.e., its "insufficiency." "Insufficiency" is defined under section 553(b)(2) as the amount by which a creditor's claim exceeds the amount of its debt. 11 U.S.C. § 553(b)(2).

As described, Berg filed a Chapter 7 petition on August 7, 2014. Ninety days prior to that date is May 9, 2014. In its Notice of Award letter dated July 30, 2014, the SSA informed Berg she was eligible to receive disability benefits relating back to November 17, 2012. The Award letter stated Berg's benefits were subject to a five-month waiting period prior to receipt and explained

10

benefits accrued since May 2013. Under 42 U.S.C. § 402(a) and 20 C.F.R. § 404.302(b)(4), disability insurance benefits are not paid until the recipient survives through the last day of the month. By illustration, benefits that accrue for the month of November are not paid until December, and so forth.

Relevant here, according to Berg's Award letter, the SSA calculated her award of back benefits as follows: Between May 2013 and November 2013, her benefits accrued at $1,440.30 per month for a subtotal of $10,080.00. In December 2013, there was a cost of living adjustment to $1,461.90. Accordingly, between December 2013 and July 2014, the back benefits were $1,461.90 per month for a subtotal during that time of $10,227.00. Together, the SSA determined Berg had accrued benefits of $20,307.00 between May 2013 and July 2014. Because section 553(b) instructs the Court to determine the insufficiency on May 9, 2014, I must determine Berg's accrued benefits for that particular date keeping in mind the May 2014 benefits were not accrued and payable until the first week of June 2014. Berg's accrued benefits from May 2013 through April 2014 total $17,385.00. This is the total accrued as of May 9, 2014. On that same day, Berg owed the SSA $19,400.00.[3] Netting $19,400.00 against $17,385.00, on May 9 there existed an insufficiency of $2,015.00

Step two applies only when there is no insufficiency on the ninetieth day prior to filing, which is not the case here. Step three directs the Court to

---

[3] While the SSA states in its Brief that Berg owed it $19,425.00 on May 9, the stipulated facts do not mention that amount.

11

determine the later to occur between (1) any insufficiency existing on the ninetieth day and (b) any insufficiency existing on the first day during the 90 days preceding the petition date, which includes the ninetieth day. 11 U.S.C. §§ 553(b)(1)(A) and (B); see also Collier, supra, ¶ 553.09[2][a]. Here, there existed an insufficiency of $2,015.00 on the ninetieth day prior to Berg's bankruptcy petition. Thus, the Court will use that day as its initial reference point to compare whether on the setoff date the SSA decreased its insufficiency.

Under step four, the Court compares the SSA's insufficiency on the ninetieth day with its insufficiency on the date of setoff. On the setoff date of July 30, 2014, no insufficiency existed. Berg owed the SSA $19,400.00 and the SSA owed Berg an accrued amount of $20,307.00. Using the accrual date instead of the date of payment more accurately reflects how the SSA calculates an individual's benefits. Thus, on July 30, 2014, the SSA's insufficiency was zero, resulting in a change of position of $2,015.00.

In applying section 553(b)'s improvement-in-position test, it is critical to remember that section 553(b) instructs the Court to look only at two dates: (1) the date of the first insufficiency during the 90 days prior to the petition date, and (2) the date of the actual prepetition setoff. Susan V. Kelley, *Ginsburg & Martin on Bankruptcy*, § 8.06[E] (5th Ed. Supp. 2016). "What happens between those two dates, or before or after them, is irrelevant." *Id.*

Section 553(b) applies even if no insufficiency exists on the actual setoff date. *See Braniff Airways*, 814 F.2d at 1040 n.12. In that case, the Fifth Circuit

12

reasoned that a creditor could certainly argue that section 553(b) does not apply when no insufficiency exists on the actual setoff date because the statute's plain language refers only to a comparison of the insufficiencies on both dates. However, the court declined to adopt this argument. *Id.* And since neither the SSA nor Berg has made a similar argument, this Court will not address that argument here.

> In essence, this case is similar to a setoff illustration provided by *Collier*:
>
> Suppose a bank had a claim against a debtor for $15,000. At 90 days before the commencement of debtor's bankruptcy case, the debtor had $10,000 on deposit with the bank. The "insufficiency" at 90 days was thus $5,000. On the 89th day, the debtor deposited $5,000, resulting in a balance of $15,000 and an insufficiency of zero. At 30 days before the commencement of the debtor's bankruptcy case, the bank offset the entire deposit against its claim. In calculating any recoverable improvement, section 553(b) requires use of the *later of* the insufficiency at 90 days before the petition date and the *first* date on which there was *any* insufficiency during the 90 day period, in this case the insufficiency on the [ninetieth] day was $5,000. Because the insufficiency at the time of setoff (zero) was less than the insufficiency at 90 days prior to filing ($5,000), the bank improved its position by ($5,000), but the bank may keep $10,000 from its setoff ($15,000 less the $5,000 recovered by the trustee).

5 *Collier, supra*, ¶ 553.09[2][b] (emphasis same).

Upon receipt of the SSA's Award letter, on the ninetieth day prior to Berg's filing, the SSA owed Berg $17,385.00 and Berg owed the SSA $19,400.00, creating an insufficiency of $2,015.00. On the actual day of setoff, the SSA's debt to Berg exceeded its claim against her reducing the insufficiency to zero, which is less than the insufficiency 90 days prior to her filing. Thus, the SSA improved its position by $2,015.00.

13

Nonetheless, the SSA contends that under no circumstances could it inequitably improve its position in the 90 days before Berg's bankruptcy filing. The SSA argues under *Lee v. Schweiker*, 739 F.2d 870 (3d Cir. 1984), that Congress's concern that banks would foresee a debtor's bankruptcy was imminent and "scramble to secure a better position for themselves by decreasing the 'insufficiency,' to the detriment of other creditors" does not apply because neither the SSA nor Berg can do anything to increase the amount of benefits that will accrue in the 90 days before the petition date. *See id.* at 877. As such, the SSA contends that it properly recovered the $19,400.00 in overpaid benefits.

This position overlooks the "purely mathematical" application of section 553(b) noted by the SSA and a variety of courts applying section 553. *See Braniff Airways, Inc.*, 814 F.2d at 1040; *Damas v. United States (In re Damas)*, 504 B.R. 290, 294-95 (Bankr. D. Mass. 2014) (concluding debtor could not recover offset of social security payments because there was no decrease in the SSA's insufficiency position); *In re Bass Mechanical Contractors, Inc.*, 88 B.R. 201, 203 n.2 (Bankr. W.D. Ark. 1988). Accordingly, considerations of a creditor's intent or equity do not factor into the analysis.

Berg cites *In re Goodman*, Case No. 11-02760-8-JRL, 2012 Bankr. LEXIS 546 (Bankr. E.D.N.C. Feb. 17, 2012), for the proposition that an insufficiency did not exist on the ninetieth day because the SSA did not determine Berg was eligible to receive benefits until the actual date of setoff of July 30, 2014. As a result, section 553(b) instructs the Court to look to the first date upon which

14

an insufficiency occurred, which was simultaneously the setoff date. Thus, according to Berg, the SSA's position improved between the date the insufficiency arose and the date of setoff, entitling her to recover the full setoff amount. However, this Court finds the Third Circuit's reasoning in *Lee* instructive. The court in *Lee* looked to when the benefits accrued as opposed to when the SSA's obligation to pay arose. *See Lee*, 739 F.2d at 877. Here, on the ninetieth day before filing her petition, Berg had accrued disability benefits in the amount of $17,385.00, which created an insufficiency of $2,015.00. Berg continued to accrue benefits up to and through the actual setoff date of July 30, 2014. On that date, no insufficiency existed. When comparing the two dates, the SSA improved its position by $2,015.00 between May 9, 2014, and July 30, 2014.

In summary, on July 30, 2014, Berg owed the SSA $19,400.00. On that same day, the SSA owed Berg $20,307.00, and set off Berg's debt of $19,400.00 against her back benefits of $20,307.00, issuing her a check for $907.00. Using the accrual method, on the ninetieth day (May 9, 2014) prior to filing her bankruptcy, Berg had accrued back benefits of $17,385.00, but owed the SSA $19,400.00. Netting $19,400.00 against $17,385.00, on May 9 there existed an insufficiency of $2,015.00. Between these two dates, the SSA improved its position in the amount of $2,015.00. Accordingly, Berg is entitled to recover $2,015.00. The SSA is entitled to retain $17,385.00.

**CONCLUSION**

For the foregoing reasons, judgment on the pleadings is granted in favor of Plaintiff Peggy A. Berg in the amount of $2,015.00. The Defendant, Social Security Administration, is entitled to retain $17,385.00 of the amount offset.

This decision shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil Procedure.

A separate order consistent with this decision will be entered.

Dated: June 15, 2017

BY THE COURT:

_____
Hon. Catherine J. Furay
U.S. Bankruptcy Judge